Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>NELSON, *et al.*,<br><br>Defendants. | Civil Action No. 17-4183 (ES)<br><br>MEMORANDUM OPINION |

**SALAS, DISTRICT JUDGE**

It appearing that:

    1. Plaintiff Curtis Campbell, ("Plaintiff"), a convicted and sentenced state prisoner at the time of filing, brings this civil rights action *in forma pauperis*. (D.E. No. 1). In an Opinion and Order dated March 6, 2018, the Court dismissed the initial Complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915, 1915A. (D.E. Nos. 6 & 7). The Court granted Plaintiff permission to file an amended complaint, and after several extensions, Plaintiff filed the instant Amended Complaint. (D.E. No. 13, Amended Complaint ("Am. Compl.")).

    2. At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

3. Plaintiff alleges the following facts in the Amended Complaint:[1]

>Plaintiff was incarcerated for a non-violent criminal charges (drug charge) and plaintiff was sentence[d] on 10/14/2016.
>
>Do [sic] to diabetes complication plaintiff became legally blind (with slight [sic] only, in the right eye) and eventually totally blind by the time he was process through Reception (CRAFT) and assigned to a particular prison (initially Bayside State Prison), yet and still was denied ADA Medical Care there and discriminatory treatment as also; and Bayside State Prison is where plaintiff was assaulted (got assaulted by cell-mate, sent to Northern State Prison Ad. Seg.) and found guilty for fighting. Despite plaintiff's prior complaints that he can not [sic] see (in each prison thus far that listed herein this complaint, totally and legally blind) and that he was being threaten by his then unstable cell-mate, this was told to various supervisors (initially it was all verbal altercation before he put his hands on me I never touched him outside trying to get him off me) and felled [sic] on death [sic] ears.
>
>Plaintiff suffered cuts to his face/head area, then, the cell-mate allegedly claim plaintiff hit the corner of the bed and caused the injuries by jumping on him. (yet, plaintiff is totally blind and can not [sic] see to hit anyone, let alone fight back)
>
>Plaintiff was transfer[red] to Ad Seg. in Northern State Prison and tried his best to file an Administrative Disciplinary Appeal but same felled [sic] on death [sic] ears. Same for plaintiff wanting to file charges on the individual whom physically assaulted him.
>
>Plaintiff was placed on the top bunk with a medical boot on his foot and legally blind in solitary confinement cell for the 91 days. Plaintiff was suffering from a lack of adequate access to proper medical and mental health care, any form of rehabilitative therapy, programming and other necessities for individuals with disability like him. (Totally blind) Plaintiff was as well yet and still denied ADA ACT Medical Care and/or Rehabilitative ACT medical care and unfortunately con-tinue[s] to experience the discriminatory treatment thus date.
>
>Once plaintiff Northern State Prison Ad. Seg. Time (plaintiff was sanction to punitive sanctions of: 15 Days LORP; 91 Days Ad. Seg; 60 Days LOCT) was completed, plaintiff was transfer[red] to

---

[1] The following factual allegations are taken from the Amended Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

> Southern State Prison. Still being denied properly ADA ACT Medical Care and Rehabilitative ACT Medical Care and once again a continuation of the common practices of discriminatory treatment there; eventually plaintiff was transfer[red] to Southwoods State Prison, yet and still denied ADA ACT Medical Care, as Rehabilitative ACT Medical Care, here, too, as the ongoing discriminatory treatment thus date.

(Am. Compl. ¶¶ 17–22).

4. In his Amended Complaint, Plaintiff re-raises his § 1983 denial of medical care claim, which was dismissed in the Court's prior Opinion, and also raises claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA") and the New Jersey Law Against Discrimination ("NJLAD").

5. With regards to his Eighth Amendment denial of medical care claim, it is again insufficient.[2] He makes various references to unspecified defendants being deliberately indifferent to his medical needs, but does not state exactly what medical care he was denied, who denied him the care, or when he was denied said care. As such, any intended § 1983 claim for denial of medical care must be dismissed *without prejudice*.

---

[2] The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

6. Plaintiff also raises a First Amendment retaliation claim.[3] Specifically, he states that the ADA liaison at South Woods State Prison, Mrs. Luz Torres, "told plaintiff personally to his face . . . that plaintiff went over her head, (written to down town Central Office of N.J. Dept. of Corr., along to other parties) which, plaintiff explained that he did not need her permission for him to write (of course with some assistance) outside her authority, if you will and/or without checking with her first and foremost." (Am. Compl. ¶ 42). Assuming Plaintiff's writing to the "down town Central Office" is constitutionally protected activity, *see Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (explaining that the filing of a prison grievance "implicates conduct protected by the First Amendment"), Plaintiff has nevertheless failed to allege any adverse action. He merely states that Mrs. Torres told him that she knew he "went over her head;" there is no indication that she took any action against him at all as a result. As such, his retaliation claim must be dismissed.

7. His remaining claims, *i.e.* violations of the ADA, RA, and NJLAD, are somewhat unclear. However, for screening purposes, he has sufficiently alleged that his rights under these statutes were violated by Defendants: denying him a bottom bunk at Northern State Prison; denying him a sign indicating his blindness on his cell door to alert staff members at all facilities; denying him access to adequate shower facilities at South Woods State Prison; and denying him a reliable way to read/be apprised of the "daily lodge/pass list."[4] These claims will be permitted to

---

[3] In order to state a prima facie case of First Amendment retaliation, a prisoner must plausibly allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

[4] Title II of the ADA prohibits discrimination in connection with access to public services, requiring that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It is well established that state prisons are "public entities" as defined by Title II of the ADA. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008). The same standards govern the RA, ADA and NJLAD claims. *See Chisolm v. McManimon*, 275 F.3d 315, 324 n. 9 (3d Cir. 2001) (confining discussion to ADA Title II "with the understanding that the principles will apply equally to the Rehabilitation Act and NJLAD claims"); *Royster v. New*

proceed.

8. In light of the Court's finding that several of Plaintiff's claims will proceed, the Court will also *sua sponte* reconsider its prior decision to deny Plaintiff's application for appointment of pro bono counsel. (D.E. No. 11). In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See Tabron v. Grace*, 6 F.3d 147, 155–56 (3d Cir. 1993).

9. After consideration of the *Tabron* factors, the Court finds that Plaintiff's ability to present his own case is limited due to his blindness and, while the legal issues are not particularly complex, factual investigation will be necessary and it is unlikely Plaintiff will be able to undertake such investigation. It is likely the case will turn on credibility determinations and expert testimony may be necessary. Lastly, Plaintiff is unable to attain and afford counsel on his own. In sum, a balancing of the *Tabron* factors favors appointment of counsel at this time.

10. Finally, the Court notes that Plaintiff submitted a notice of motion for a preliminary injunction with his Amended Complaint. (D.E. No. 13 at 1–4). However, he does not attach a supporting brief and his Amended Complaint does not address the requirements to obtain a preliminary injunction. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (noting that to obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability

---

*Jersey State Police*, 152 A.3d 900, 910 (N.J. 2017) ("The requirements for failure to accommodate claims under New Jersey's LAD have been interpreted in accordance with the Americans with Disabilities Act") (internal citation omitted).

of eventual success in the litigation, and (2) that it will be irreparably injured if relief is not granted. In addition, the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest" (internal citations and quotation marks omitted)). As such, his Motion will be denied without prejudice.

11. An appropriate Order follows.[5]

        *s/Esther Salas*
        **Esther Salas, U.S.D.J.**

---

[5] The Court notes that the sixth claim in the Amended Complaint appears to be against Rutgers Healthcare, as it refers to third party contracts. (Am. Compl. ¶¶ 49–55). However, the allegations are disjointed, and he references requirements that do not appear relevant to Plaintiff and the facts he has alleged (*i.e.* the Individuals with Disabilities Education Act ("IDEA") and a free and public education (a "FAPE")). Because the Court is unable to identify his exact claim, it will be dismissed without prejudice.